## Thornton v. Thornton.

(Decided September 18, 1913).

### Appeal from Marion Circuit Court.

1. Arbitration and Award—Setting Aside Award.—It is the tendency of the courts to uphold awards upon sound principles of public policy; but one cannot be sanctioned that was rendered in a proceeding where one party has had no opportunity to controvert the evidence of his adversary taken in his absence and transcribed by a partisan and relative of the other party, and especially where the award is principally based on that evidence.

2. Arbitration and Award—Setting Aside Award Made Without Notice and by Sole Arbitrator.—A sole arbitrator should not be permitted to make an award based upon evidence taken without notice to the party against whom it was used.

O'REAR & WILLIAMS and H. P. COOPER for appellant.

JOHN McCHORD and C. C. BOLDRICK for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

This is a common law action by appellee, asking a judgment on an award; the answer of the defendant seeks to have the award set aside upon the ground that the arbitrator undertook to pass upon things which were not submitted in the articles of agreement; and upon the further ground that at two out of the three meetings held by the arbitrator he had no opportunity to be present or to be heard, and at such meetings he had no representative present, and that appellee presented claims at such meetings of which he had never had notice until after the award was made, and that at one of the said meetings depositions of two witnesses were taken, which

fact he did not know until after the award; that the award was principally based upon the evidence of these two witnesses which was taken at a secret meeting of which he had no notice, and that he had no opportunity to cross-examine either of them, and in effect pleads that for these reasons the award was procured by fraud.

The article of agreement is as follows, to-wit: "THIS AGREEMENT OF ARBITRATION this day entered into by and between W. A. Thornton party of the first part, and G. K. Thornton party of the second part,

"Witnesseth: That whereas there is a controversy and disagreement between the parties of the first and second part in relation to the adjustment and settlement of the accounts of said parties and their respective services in raising a crop of about fifteen acres of tobacco by said parties on the farm of T. H. Thornton in Marion County about the year 1896 and also for work claimed to be performed by the second party for the first party in the tobacco transaction and also for other work in the year 1896 and 1897.

"It is now hereby agreed by the parties hereto that Prentice Weatherford shall hear the entire evidence in relation to all questions touching the raising, handling and sale of said tobacco and work by said Geo. K. Thornton that may be offered by either party and from said evidence return his award in writing to each of the parties hereto.

"Each of the undersigned parties agree to abide by the award of said Prentice Weatherford adjusting the matters hereinabove mentioned.

"Given under our hands this December 21, 1911."

The award is as follows: "The within matter having been submitted to me to adjust and settle between the parties herein named, I did on the 14th day of March, 1912, call the parties together at Bradfordsville, Ky., and after fully considering and calculating on all papers, accounts and evidence submitted by the parties, decide that the following amounts were due and payable to G. K. Thornton from W. A. Thornton at the dates given for each amount, viz.:

On the sale of tobacco crop, February 15, 1899 ........$100.00
For work for self and team, year 1896 ......................297.25
For work for self and team, year 1897 ......................64.50
For articles sold W. A. Thornton, 1897 ....................19.75

And that the said G. K. Thornton should have credit for said amounts at same dates on any claim or claims

that said W. A. Thornton held against him at said dates or that he be allowed interest on these amounts to the date of this settlement.''

The judgment of the circuit court upheld the award throughout except as to the item of $19.75, which was disallowed, and from that judgment this appeal is prosecuted.

Appellant testified that at the time the articles of agreement were entered into that there was an agreement between him and appellee that the metings of arbitration were at no time to interfere with some important business engagements which might at any time call appellant away from home, and this is substantially admitted by appellee. The first meeting was held on the third day of January, 1912, at which time the statements of both appellant and appellee were heard, but the matter was not concluded because appellant was compelled to leave home on business. At the time of or before the first meeting there seems to have been some sort of understanding or agreement between the parties by which Breeding was to be present at the arbitration upon behalf of appellee, and Newbolt upon behalf of appellant, and they were each present at the first meeting.

At the conclusion of the first meeting there was a tentative agreement by which the parties were again to meet on the first day of March; but, a day or two before the first day of March the arbitrator was notified, as he states, over the telephone that appellant had been called to Louisville on important business, and could not be present at that time; but notwithstanding this notice and in violation of the agreement between these two brothers that the arbitration meetings were were at no time to interfere with appellant's important business engagements, he proceeded to hold the meeting, and to take the depositions of two witnesses, in absence of appellant or any representative of his; for it appears that even his friend, Newbolt, was not present and had had no notice of this meeting, but that in his stead one Avritt, an uncle of appellee's wife was there, and actually took down in writing the statements of the two witnesses introduced by appellee. Appellant testifies that he never knew of these depositions, or of the fact that they had been taken, until after the award had been made, and this evidence of his is uncontradicted.

At the last meeting, on the 14th day of March, neither appellant nor appellee were present, they having been

notified by the arbitrator that he did not desire their presence; but appellant when asked by the arbitrator if he had any further evidence to offer, being in ignorance of the fact that these two depositions had been taken, bearing upon the claims of appellee, which he says had not been mentioned in the first meeting, and thinking that only his own and his brother's statement given in the first meeting were to be considered, told the arbitrator that he had nothing further to offer.

At the meeting on that day we find again the uncle of appellee's wife aiding the arbitrator, and actually writing or copying the award, and Breeding, the other representative of appellee, also present, and no representative of appellant.

It is the tendency of the courts to uphold awards upon sound principles of public policy; but we cannot sanction one rendered in such an *ex parte* proceeding where one party has had no opportunity to controvert the evidence of his adversary taken in his absence and transcribed by a partisan and relative of the other party, and especially where the award is principally based on that evidence.

He not only had no opportunity to cross-examine these witnesses, but he had none to controvert their testimony by others, for the fact that their evidence had been taken was concealed from him until after the award.

The courts will look with suspicion upon an award based on *ex parte* evidence, and particularly where that evidence is used to substantiate claims which one party to the arbitration did not know were being asserted against him.

In Cravens v. Estis, 144 Ky., 511, it was held that one arbitrator and an umpire were without authority to make an award in the absence of the other arbitrator without notice to him. There is much stronger reason why a sole arbitrator should not be permitted to make an award based upon evidence taken without notice to the party against whom it was used.

The judgment is reversed, with directions to set aside the award; to transfer the cause to the equity docket, and refer it to a commissioner for a settlement of the accounts between the parties, and to allow them to amend their pleadings.